**SO ORDERED.**

**SIGNED this 28 day of August, 2007.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **MARSHALL OIL GROUP, LLC** | **04-04097-5-ATS** |
| **DEBTOR** | |

**ORDER DENYING MOTION TO VACATE DECISION**

The matter before the court is the Motion of Jeremy Reaves Requesting That The Court Vacate Its Decision Authorizing Sale of Real Property (Glenwood Avenue) Due To Title Objection. An objection to the motion was filed by Herbert Jackson Marshall, a response was filed by the debtor, Marshall Oil Group, LLC, and a hearing was held in Raleigh, North Carolina on August 22, 2007.

In essence, the motion is a request by Jeremy Reaves to be relieved of any obligation to purchase real property owned by the debtor in possession, Marshall Oil Group, LLC, located at 6908 Glenwood Avenue, Raleigh, North Carolina. The problem with Mr. Reaves' request is that Mr. Reaves agreed to purchase the property and waived his right to the title defect of which he now complains. Furthermore, by agreeing to purchase the property, Mr. Reaves preempted a second interested purchaser, Jay Libbus, from buying the Glenwood property.

The background facts are not in dispute. Marshal Oil filed for chapter 11 bankruptcy relief on November 10, 2004, and since that time has operated as debtor in possession. The debtor held several properties that it has attempted to sell, including the Glenwood property that is currently leased to Mr. Libbus and is operated as a convenience store and gas station. The Glenwood property is encumbered by several liens, including a first lien in favor of Suntrust Bank. Suntrust's first mortgage has been reduced by the sale of other properties owned by the debtor, and the balance owed to Suntrust is approximately $200,000 plus interest and attorney's fees. Suntrust was granted relief from the automatic stay on November 7, 2005, but Suntrust has not exercised its foreclosure rights. Herbert Jackson Marshall has a second lien on the Glenwood property, with a claim of $166,000 plus interest and attorney's fees.

The debtor filed a motion on March 5, 2007, to sell the Glenwood property to Reaves, who intended to build a Cook Out Drive In restaurant on the property, and a hearing was held on April 25. The debtor also received an offer to purchase from Mr. Libbus, but in the debtor's opinion the Reaves offer was superior. At the hearing Mr. Reaves and Mr. Libbus agreed to make changes to their offers and the hearing was continued to June 6.

On May 17, the debtor filed an amendment to its motion for sale, in which it stated that it now favored the offer submitted by Mr. Libbus. The negotiations continued, and at the hearing on June 6, the debtor was again supporting the offer made by Mr. Reaves. As a part of the offer Reaves agreed to waive the 55-day examination period, to close the sale within 10 days of the court's approval, and to waive the

2

intended use provision and the right to terminate the contract pursuant to the intended use provision contained in his original written offers.[1]

At the hearing the parties agreed that they would submit an agreement providing for the sale to Reaves. It was also determined that Libbus would have three weeks to leave the property, but would have time to sell its gasoline inventory and 60 days to move its equipment. While Reaves and the debtor were drafting the agreement, attorneys for Reaves searched the title to the property and found a restrictive covenant in favor of the debtor's neighbor, McDonald's Corporation. Reaves stopped working toward a final agreement, and filed the motion now before the court.

In 1993, the debtor granted an option to purchase a parcel of real estate adjacent to the Glenwood property at issue to McDonald's. One of the conditions of the conveyance was for Marshall Oil to record a restrictive covenant affecting the use of Marshall Oil's retained property, providing that "the premises will not be used for a quick service hamburger restaurant, whether or not such restaurant has a drive-through or walk-up facility . . . for a period of thirty-five (35) years from the date of the recording of this document." The restrictive covenant was recorded on June 1, 1994, and by its terms runs with the land and is binding upon the successors and assigns of Marshall Oil.

Reaves contends that the existence of the restrictive covenant violates the title provisions in its offer. Specifically, he maintains that Marshall Oil cannot convey "fee simple marketable title to the Property by general warranty deed, subject only to exceptions acceptable to Buyer," because the restrictive covenant

---

[1] The offer provides "If Buyer determines, prior to the date of Closing, that use of the Property for its Intended Use will violate any private restrictions or governmental regulations, then Buyer may terminate the Agreement by written notice, and neither party shall then have any further obligations in connection with this Agreement." Section 6(b).

3

is an exception not acceptable to Reaves. Further, Reaves contends that any court order allowing the sale free and clear of liens, claims, encumbrances and interests pursuant to § 363(f) cannot affect the restrictive covenant because McDonald's was not noticed with the motions to sell, nor was there any effort to obtain McDonald's consent.

The debtor and Herbert Jackson Marshall contend that the restrictive covenant at issue falls squarely within the intended use provisions of the offer, which Mr. Reaves waived at the June 6 hearing. Mr. Reaves arguably also waived the title examination provision: it provides that "after the date of execution of the Agreement . . . Buyer shall . . . cause a title examination to be made of the Property before the end of the Examination Period." Section 6(a). The agreement has yet to be executed, but in any event, Mr. Reaves also waived the examination period. The court does not reach the issue of whether the title examination was waived, because the waiver of the intended use provision so clearly waived the restrictive covenant as a basis for terminating the contract.

"Intended Use" is defined as "the use of the Property for the following purpose: restaurant, including drive through restaurants, and all other uses permitted by zoning laws." Section 1(d). The Intended Use Condition provides that "if Buyer determines, prior to the date of Closing, that use of the Property for its Intended Use will violate any private restrictions or governmental regulations, then Buyer may terminate the Agreement by written notice, and neither party shall have any further obligations in connection with this Agreement." Section 6(b).

Reaves maintains that the restrictive covenant falls outside of the Intended Use Condition, contending that it is not a "private restriction or governmental regulation," but is instead a title defect. Reaves submits that the fact that the restrictive covenant is recorded on the public record takes it out of

the realm of "private restrictions."  This argument is not convincing.  The word "private" means "[r]elating or belonging to an individual, as opposed to the public or the government." Black's Law Dictionary 1233 (8th ed. 2004).  "Public" means "[r]elating or belonging to an entire community, state, or nation."  Black's Law Dictionary 1264.  Putting a private agreement, that is, an agreement between two individuals, on the public record, does not convert a private restriction to a public one; it merely provides notice to those who inquire of the existence of the private agreement.

The purpose of the Intended Use Condition was to ensure that Reaves would be able to use the property for a restaurant before he was committed to purchase the property.  Reaves made a specific decision to waive that condition, and he did so in the face of a competing offer from Libbus during a contested hearing in which creditors thought the Libbus offer should be accepted due to a more immediate closing date.  Reaves waived the examination period and the intended use condition and agreed to close within 10 days for the specific purpose of inducing the parties and the court to support his offer.[2]  As a result of the waivers, the court approved the sale to Reaves, and Libbus' offer has expired.  Libbus has made no indication that he intends to purchase the property should Reaves be released, and instead,

---

[2] In fact, Reaves waived the Intended Use Condition when he may have been on notice of a possible restriction.  The debtor's counsel advised the court at the hearing on August 22, 2007, that the listing agent was aware of the restrictive covenant and advised potential purchasers thereof.  Reaves' counsel acknowledged that the agent mentioned something about the use, but was not specific about a restrictive covenant.  Regardless, a reasonable purchaser should have been aware that McDonald's operated a restaurant on the adjacent property, that McDonald's purchased the property from the debtor, and that a title search to discover restrictions on the land use would have been in order.  Reaves made its original offer to purchase the property in October 2006, and the debtor did not file a motion for approval of the sale until March 2007.  Reaves had ample opportunity and notice to conduct a title search before he was committed to purchase the property, and chose not only not to do so, but ultimately to waive the results of such a search to the extent they related to the use of the property.

Suntrust has indicated that it may pursue foreclosure in the near future (with the likely result that Herbert Jackson Marshall will not be paid on his secured claim, and there will be no return to the estate).

The Reaves motion will be denied. Because Reaves clearly waived the Intended Use Condition, and because the restrictive covenant falls within the terms of the waived condition, Reaves will not be released from his obligation to purchase the property. While Reaves contends that the terms of the final agreement were still being negotiated when the restrictive covenant was discovered, it was apparent that the only issues related to the closing date and the time during which Mr. Libbus must vacate the premises. These are not material to the sale and do not indicate there was no meeting of the minds on the essential terms.

Reaves also requested the court to allow the parties to re-notice the sale motion to McDonald's to give it the opportunity to object or consent to the removal of the restrictive covenant. The litigation that would likely ensue as a result of this process could bring the administration of the chapter 11 case to a halt, and the potential claim that might result could engulf the entire proceeds of the sale. Because Reaves waived the condition of closing related to the restrictive covenant, the court will not invite such a burden for the estate.

Based on the foregoing, the motion to vacate the decision authorizing the sale of the Glenwood property to Reaves is **DENIED**. The sale is approved on the terms announced at the hearing on June 6, 2007.

**SO ORDERED**.

**END OF DOCUMENT**